IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) ) v. ) ) GENERAL CABLE CORPORATION, ) SALLIE B. BAILEY, NED HALL, ) MICHAEL T. MCDONNELL, GREGORY E. ) LAWTON, CRAIG P. OMTVEDT, ) PATRICK M. PREVOST, JOHN E. WELSH, ) III, PRSYMIAN S.P.A., and ALISEA CORP., ) ) Defendants. ) | Case No. _____ JURY TRIAL DEMANDED CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on December 4, 2017 (the "Proposed Transaction"), pursuant to which General Cable Corporation ("General Cable" or the "Company") will be acquired by Prysmian S.p.A. ("Parent") and Alisea Corp. ("Merger Sub," and together with Parent, "Prysmian").

2. On December 3, 2017, General Cable's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Prysmian. Pursuant to the terms of the Merger Agreement, shareholders of General Cable will receive $30.00 in cash for each share of General Cable they own. The stockholder vote on the Proposed Transaction has been set for February 16, 2018.

3. On December 22, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of General Cable common stock.

9. Defendant General Cable is a Delaware corporation and maintains its principal executive offices at 4 Tesseneer Drive, Highland Heights, Kentucky 41076. General Cable's common stock is traded on the NYSE under the ticker symbol "BGC."

10. Defendant Sallie B. Bailey ("Bailey") is a director of General Cable.

11. Defendant Ned Hall ("Hall") is a director of General Cable.

12. Defendant Michael T. McDonnell ("McDonnell") is a director, and the President and Chief Executive Officer ("CEO") of General Cable.

13. Defendant Gregory E. Lawton ("Lawton") is a director of General Cable.

14. Defendant Craig P. Omtvedt ("Omtvedt") is a director of General Cable.

15. Defendant Patrick M. Prevost ("Prevost") is a director of General Cable.

16. Defendant John E. Welsh, III ("Welsh") is the Non-Executive Chairman of the Board of General Cable.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Parent is a company organized under the laws of the Republic of Italy and a party to the Merger Agreement.

19. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of General Cable (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of November 29, 2017, there were 50,058,714 shares of General Cable common stock outstanding,

held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

27.     General Cable develops, designs, manufactures, markets, and distributes copper, aluminum, and fiber optic wire and cable products for use in the energy, industrial, construction, specialty, and communications markets. The Company also engages in the design, integration,

4

and installation on a turn-key basis for products such as high and extra-high voltage terrestrial and submarine systems. General Cable operates and reports its financials in four geographic segments: North America, Europe, Latin America, and Africa/Asia Pacific.

28. The Company and its predecessors have served various wire and cable markets for over 150 years, and it incorporated in Delaware in 1994. The Company's immediate predecessor was a unit of American Premier Underwriters, Inc. ("American Premier"), which acquired the Company's existing wire and cable business in 1981. In 1994, a subsidiary of Wassall PLC ("Wassall") acquired the predecessor by purchase of General Cable's outstanding subordinated promissory note, the General Cable common stock held by American Premier, and a tender offer for the publicly-held General Cable common stock. In 1997, Wassall consummated public offerings for the sale of all of its interest in General Cable's common stock, and the Company has operated as an independent public company since completion of the offerings.

29. On December 3, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement with Prysmian.

30. Pursuant to the terms of the Merger Agreement, shareholders of General Cable will receive $30.00 in cash for each share of General Cable they own.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

31. On December 22, 2017, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33. The Proxy Statement omits material information regarding General Cable's

5

financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("J.P. Morgan").

34.   The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

35.   Although the Proxy Statement provides stockholders with certain financial projections of General Cable, it fails to disclose certain material projections that were relied upon by J.P. Morgan in performing its valuation analyses. For example, according to the Proxy Statement, in performing its Discounted Cash Flow Analysis, "J.P. Morgan calculated the cash flows that the Company is expected to generate during fiscal years 2018 through 2021 based upon the Company projections and upon extrapolations based on assumptions provided by the management of the Company for the fiscal years 2022 through 2027." The Proxy Statement, however, fails to disclose the full set of these "cash flows" through 2027, as well as the definition of these cash flows and their line items.

36.   Further, the Proxy Statement discloses certain projections for non-GAAP (generally accepted accounting principles) metrics, including Adjusted EBITDA, Adjusted EBIT, and Unlevered Free Cash Flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

37. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

38. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the full set of "cash flows" for years 2018 through 2027 used by J.P. Morgan, including its definition and the line items used to calculate those cash flows; (ii) the specific inputs and assumptions underlying the discount rate range of 7.75% to 8.75% selected by J.P. Morgan in its analysis; (iii) the projected "tax benefits" from the subordinated convertible notes; and (iv) the terminal exit multiples implied by J.P. Morgan's analysis.

39. With respect to J.P. Morgan's Public Trading Multiples Analyses, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by J.P. Morgan in its analysis.

40. With respect to J.P. Morgan's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by J.P. Morgan in its analysis.

41. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Opinion of Financial Advisor; and (ii) Certain Company Forecasts.

42. The Proxy Statement omits material information relating to the background

7

leading to the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

43. The Proxy Statement indicates that the Company entered into confidentiality agreements with at least 21 parties that expressed an interest in engaging in a transaction with the Company. Although the Proxy Statement does indicate that "none of Party A, Party B or Party I would be subject to standstill obligations that would prohibit them from making an unsolicited proposal to the Board following announcement of entry into the merger agreement," the Proxy Statement fails to disclose the terms of each of the confidentiality agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions, and whether the parties other than Parties A, B, or I that expressed an interest in a transaction with the Company are prohibited from making an unsolicited superior proposal to the Company. Notably, Section 6.2(g) of the Merger Agreement provides, in part, that the Company shall not "waive, terminate, modify or fail to enforce any 'standstill' or confidentiality or similar obligation."

44. Relatedly, the Proxy Statement states that, during the sales process, the Company received proposals for a transaction from Parties A through I, but the Proxy Statement fails to disclose any of the terms of the proposals submitted by those interested parties. Notably, Party A engaged in a bidding war with Parent and, at one point, "submitted a cash bid that was substantially higher than Parent's bid." Stockholders are entitled to know the economic and other terms of the offers to acquire the Company so that they can assess whether the Board has acted in the stockholders' best interests and accepted the best possible offer.

45. The Proxy Statement mistakenly and misleadingly states that, "[d]uring the two years preceding the date of J.P. Morgan's opinion, neither J.P. Morgan nor its affiliates had any

material financial advisory or other material commercial or investment banking relationships with Parent." In the very next sentence, the Proxy Statement directly contradicts this statement by stating that, "[d]uring the two years preceding the date of J.P. Morgan's opinion, J.P. Morgan and its affiliates have had commercial or investment banking relationships with the Company and Parent, for which J.P. Morgan and such affiliates have received customary compensation," and the Proxy Statement lists several instances where J.P. Morgan has provided services to Parent for compensation. The Proxy Statement therefore must be corrected to remove the false and confusing statement that J.P. Morgan has not provided services to Parent in the past two years.

46. Similarly, the Proxy Statement states that "J.P. Morgan and its affiliates hold, on a proprietary basis, less than 1% of the outstanding common stock of each of the Company and Parent." The Proxy Statement, however, later indicates that J.P. Morgan Chase & Co. beneficially owns 5.37% of General Cable's stock, which amount was subsequently reduced to 4% on or around January 4, 2018. The Proxy Statement therefore must clarify that J.P. Morgan's affiliate does in fact own more than 1% of the outstanding stock of the Company.

47. Finally, the Proxy Statement omits material information regarding potential conflicts of interest of Company management, including whether there have been any discussions with representatives of Parent regarding post-merger employment of General Cable's executive officers and, if so, the substance and timing of the conversations. Communications regarding continued employment during the negotiation of the underlying Proposed Transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best

9

interests of the Company's stockholders.

48. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Board; and (iii) Opinion of Financial Advisor.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to General Cable's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and General Cable

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. General Cable is liable as the issuer of these statements.

52. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

53. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on

10

the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

55. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Prysmian

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants and Prysmian acted as controlling persons of General Cable within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of General Cable and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants and Prysmian was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

62. Prysmian also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

63. By virtue of the foregoing, the Individual Defendants and Prysmian violated Section 20(a) of the 1934 Act.

64. As set forth above, the Individual Defendants and Prysmian had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

    C.    Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

    D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

    E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

    F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 9, 2018

**GRAY & WHITE LAW**

By: */s/ Jacob Levy*
Mark K. Gray
Matthew L. White
Jacob E. Levy
Gray & White Law
713 E. Market St. #200
Louisville, KY 40202
(502) 805-1800

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800